STEAMBOAT VIRGINIA, Respondent, v. KRAFT *et al.*, Appellants.

1. The custom or usage authorizing those engaged in the transportation of merchandise to advance to forwarding agents the existing charges thereon, and to hold the consignees and owners liable therefor, does not extend to or cover advances made on demands upon the consignees or owners wholly foreign to, and disconnected with, any cost or charge for transportation.

*Appeal from St. Louis Law Commissioner's Court.*

One Whiting, acting as a forwarding merchant in New Orleans, shipped for St. Louis, per the steamboat Virginia, five cases of scythes. When said goods were received on board of said steamboat, the said Whiting demanded and the clerk of said steamboat paid to said Whiting the sum of $153 42. Said sum was entered as " charges" in the bill of lading. Of said sum of $153 42, a portion—$147 92—formed no part of the charges paid by or due Whiting on account of the said merchandise shipped on the Virginia ; it was a charge made by Whiting on account of former advances, travelling expenses, lawyer's charges for collecting, &c. The merchandise shipped by said Whiting as forwarding agent was delivered to E. F. Kraft & Co., the owners thereof, at St. Louis, who refused to pay to said steamboat the said item of $147 92, alleging that they were not liable therefor, but admitting their

liability to the extent of the remaining advances. This suit was brought in behalf of said steamboat to recover said sum of $153 42.

The court, at the instance of the plaintiff, gave the following instructions: "1. The custom or usage of a particular trade fixes the liability of parties, unless there is an agreement to waive the ordinary custom or usage of the trade in which the contract is made. 2. If the jury believe from the evidence that it is customary for boats running between New Orleans and St. Louis to receive goods in New Orleans and pay charges thereon without knowing the consideration for these charges, and that the plaintiff in this case received the defendants' goods in New Orleans and paid to the defendants' agent there the sum of $153 42 as charges on the same, without knowing what those charges were for, then they are entitled to recover the amount paid, although the jury may believe that the whole amount of said charges were not properly chargeable on that particular lot of goods for previous freight, or the ordinary charges incurred in the transportation of the same. 3. The acts of the defendants' agent in New Orleans are binding upon them, and they are liable for money received by him for and on their account, notwithstanding the same may have been improperly charged by the said agent, unless the plaintiff knew the charges were improper, and the burden of proving that fact lies on the defendants. 4. The defendants had their choice to receive or to refuse to receive the goods on their arrival here; but by receiving the goods without any objection to the charges on the same, they admitted their liability, and are now bound to pay the full amount of said charges, whether the same were properly charged or not by their agent in New Orleans, unless the jury find from the evidence that the plaintiffs knew before they paid said charges that they were improper, and were not the ordinary and usual charges incurred in the transportation of the goods in question. 5. If the jury believe that Abijah Whiting was the shipping agent of the defendants in New Orleans,

6—VOL. XXV.

and that acting in that capacity for the defendants he procured the said plaintiff to pay the sum of $153 42 as charges on the goods of the said defendants, and that the said defendants received the goods knowing that said charge had been paid by the plaintiff, then they are liable therefor, and the jury will find for the plaintiff."

The court refused to give the following instructions asked by defendants: " 1. The jury are instructed that the plaintiff is entitled to recover in this action of defendants only such sums as they find were paid out on account of freight and charges on the said five cases of scythes named in the bill of lading. 2. If the jury believe that the sum of $147 92, or any other sum paid by plaintiff to Whiting, was collected by said Whiting on account of other transactions than those connected with the shipment and charges on said scythes, then they will not find for plaintiff for such amount."

The jury returned a verdict for plaintiff for the whole amount sued for.

*Biddlecome*, for appellant.

I. Whiting was in no sense the agent of the defendants either by delegated power or from authority incidental to the particular business or employment in which he was employed. He was only a forwarding merchant, and had no right to collect of the carrier of the goods any other moneys than such as he had paid out upon, and might properly charge for his services in connection with the particular goods forwarded. The payment by the officers of the plaintiff to Whiting was voluntary, and without authority and without consideration to the defendants, except as to the sums advanced, and forwarding charges upon the goods consigned. The receiving of the goods by the defendants did not subject them to the payment of any other sums than such as were incident to the transportation of the goods. The lien of the carrier on goods does not extend beyond his own freight and that which he has advanced for former charges and costs of transportation on the same. He may be subrogated to the rights of the for-

warding merchant or shipper in the lien which he had, but can obtain no rights against the goods beyond that. The custom attempted to be shown creates no liability against defendant.

*A. M. Gardner*, for respondent.

I. The money was paid innocently by plaintiff to defendants' agent, and if he had no right to receive the same, defendants and not plaintiff should suffer the loss. (Story on Agency, § 442, 451.) As agent, consignor or forwarding merchant for defendants, Whiting was authorized to make the contract contained in the bill of lading, and by which defendants are now bound. (Edwards on Bail. 499.) The plaintiff followed the custom of the trade in paying the charges specified in the bill of lading without inquiring as to the consideration therefor. (Ruggles v. Washington Co. 3 Mo. 348; Edwards on Bailment, 510.) The charges were paid to the forwarding merchant having the goods in possession, for the purpose of making freight for the vessel, according to the usage of the trade, and should be refunded. (Flanders on Maritime Law, 180.)

SCOTT, Judge, delivered the opinion of the court.

In the case of White v. Vann, 6 Humph. 73, the court said it was "proved by several enlightened merchants and well-informed owners of steamboats, that it is the long and well established custom and usage of trade, not only on the Tennessee river, but throughout the United States, for freighters of goods to advance to the forwarding agents the existing charges upon them, which the consignees and owners are liable to refund; that this usage is indispensable to the successful prosecution of commercial operations, and of great and mutual advantage to all parties." We have copied the above extract as showing the usage, because upon examination we have not been enabled to find much, if any thing, in relation to it. The advantages resulting from this usage are so obvious that it must commend itself to every one; and we

should regret to see it a stranger to our courts. But advantageous as this usage is shown to be, we do not know, nor can we conceive any thing that would more effectually render it odious than such an extension of it as would make it cover advances for claims or demands on the owner or consignees wholly foreign to and disconnected with any cost or charge for transportation. If this were tolerated, not only the forwarding agent, but every one who would collude with him, might obtain payment of demands, whose justice the owners or consignees refused to recognize. It would be the introduction of a novel mode for the collection of debts where payment had been denied on the ground of their invalidity, and a means of compelling the owner to submit to unjust exactions or to refuse him his goods.

As the debt paid by the plaintiff through her agent was in nowise incurred by, nor in any way connected with, the transportation of the merchandise, she could not by such voluntary payment, unsupported by any usage, make herself a creditor of the defendant. Nor can the officers of the plaintiff, by any custom or usage, protect her from the consequences of their neglect in not ascertaining whether their advances were the costs of transportation. Would they advance any amount, however enormous, and expect to save her from loss by a usage which did not require them to ascertain the validity of the charges ? A custom to encourage negligence at the expense of others would scarcely be tolerated by the law. Being familiar in the business of transporting merchandise, if the items of the charges were produced and examined, the agent could see at once whether they were usual and proper.

The principle that, where one of two innocent persons must suffer by the act of a third, he should bear the loss who has placed it in the power of the third person to do the injury, has no application here. The plaintiff is not an innocent party. Her agents were guilty of gross negligence in not informing themselves of the nature of the charges for which they made an advance. There is no pretence in the circumstances of the case to warrant the instruction to the effect that

the defendants, by receiving the goods, acknowledged the justice of the charges, and were liable to pay them, unless the plaintiff, when she advanced them through her agent, knew that they were not the ordinary and usual charges incurred in the transportation and shipment of goods.

As the charge was illegal and unjust; as there was no evidence that the defendants were aware of its nature when they received the goods; as they objected to it so soon as it was known; and as they could not contemplate that an improper charge would be made against them, there is no foundation for the presumption that they acquiesced in or acknowledged the justice of the plaintiff's demand. The defendants, upon tendering the legal advances, would have been entitled to the possession of their goods, and might by an action have compelled their delivery. As they have them lawfully without suit, there is no reason why they should be placed in a worse situation than if they had obtained them by suit. The other judges concurring, the judgment will be reversed, and the cause remanded.